Good morning, Mr. Pinnavaria. You may proceed. Good morning, Your Honours. My name is Carmen Pinnavaria Crosse. I appear before this court in the name of equality and justice to all. The Constitution is the law of the land. This appeal is about the law. The Constitution allows individuals to represent themselves as a Crosse in a court of law. The courts have the obligation to compare with the law that protects Crosse. If the duty and responsibility to govern is mandated by the Supreme Court and the model of court and judicial conduct... Mr. Cunberry, I think we know what the law is with respect to Crosse litigants, and we're going to certainly treat you and give you every respect that you are pursuant to the Constitution. Let's talk about the issues of this case. Why is it that the plaintiffs did not have the right to dismiss their lawsuit? What precludes them from being able to do that? Yes, Your Honour. The lawsuit, the case was scheduled for trial and was dismissed the day of the trial. And you had no counterclaim at that point? Right. The fact is there was a collusion between my attorney and Motorola attorneys and Crosstown attorneys to settle the case. Okay. So they settled the case. Somebody, if you will, bought the lien, a different party. So now they're saying, okay, we're going to dismiss the suit because I'm not owed the money anymore. The plaintiff says I'm not owed this money anymore. Right. Your Honour, the issue here is that when I was represented as a prosaic trying to retain a legal counsel, which I was compelled to do so, was the judge violated all my legal rights. And that's what I'm going to hear if this Court allows me to move forward what the issues are of the case. Okay. So your complaint, though, you're complaining about the case being dismissed and striking your pleadings. No. My complaint, Your Honour, first of all, that my legal rights as a prosaic were violated by the trial court. And that's what I would like to, if this Court will allow me, to prove all the violations that were done on my behalf. Okay. Go ahead. I'm sorry. Are you saying that the trial court made some wrong legal rulings? That is correct. Okay. Because your prosaic money. Okay. The Constitution mandates that all individuals are to be judged with fairness, justice, equality, and honesty. This section asserts whether the trial court entered judgment with fairness properly adjudicated under the Constitution of Equal Rights. This appeal raises important questions about the judicial system for prosaic litigants. How the trial court must consider prosaic litigants' good faith in attempt to cure perceived deficiency in its complaint. In this case, the trial court denied Penevere efforts by failing to specify the deficiency of the complaint or its complaint. Several times, the trial court rejected Penevere complaints without any explanation. Okay. Let me stop you there and see if I understand. Your first point is that the court ruled against you but did not provide any specific reasons for doing so. That is correct, Your Honour. Does that seem to be what you're telling us? That is correct, Your Honour. Okay. Go ahead. Your Honour, the trial court's rejection of the amended complaints without any explanation. And one, the allegations were insufficient. It was abuse of discretion and power. This alone is sufficient to vacate all trial court order remained for further consideration to other district courts for trial. It is a disgrace to our Constitution and what it stands for. It is the cornerstone of our democracy. The assertion made by retired Judge Poissner after 36 years as a judge of the appellate court for the Seventh Circuit, that prosaic are mistreated by the legal system, that are not receiving a fair shake. When a civilian files a lawsuit, the complaint fails to state a claim. The trial judge dismisses without laying out the reason for this decision. In most cases, the staff left lawyers to review appeals from prosaic litigants. Their recommendations are generally overstepped by the judges. In the case filed in this court, 2160697, Penaveria v. Tribel Association, was overstepped not only by this court, but also by the Illinois Supreme Court. The case is now on appeal before the United States Supreme Court. The Supreme Court has been pretty clear. Our right's refusal to grant a leave without justifying the reason for denial is not an exercise of discretion. It is merely abuse of discretion inconsistent with the federal rule of law. The questions are, did the trial court judge the case on its merit and not because of its prosaic? By law, every judge must take an oath affirming the equal rights to the poor, to the rich, and faithfully and impartially discharge and perform the duty upon me as a judge under the constitution of law of the United States. I want to make sure you don't run out of time when you have the opportunity to address all these points. I'm almost done. I understand the first point is you're saying that you were improperly held to a different standard, right? Yeah, that's correct. Can you address your other point, whether the settlement between the Indigo and Crosstown was proper? You seem to be suggesting there was some collusion that was improper. Why was that settlement improper? It was improper because the entry to Motorola or Indigo, they never appeared as interesting in the case. They just show up at the last minute. To settle it, is that what you're saying? They just show up at the last minute to settle and dismiss, is that what you're saying? That's right. They enter into what you call a settlement agreement at the last minute after three years of being in court. In other words, they were absent defendants, and that's what I'm leading on to. They were listed as defendants, though. Pardon me? They were defendants. They were sued by Crosstown Property Management. That's correct. They entered into a settlement agreement by paying $11,000, which then Crosstown dismissed the case. Right. They have a right to do that. How is it that that was improper? They have every right to do that. No, they didn't. That's where I'm going to lead. Tell us why. Yes, Your Honor. Before the state of Illinois, the federal state, before a mechanic's lien takes precedence over the first mortgage, the contractor must show that the workmanship done to the property was an immense value to the property, which in this case was not. And that's where I'd like to finish it. The Judiciary Act of 1789 states, in all courts of the United States, the parties may plead and manage their own cases personally. It follows the judge must respect, trust, and religion's rights to represent themselves. There are the law of justice for ordinary people. They have the day in court and receive justice no matter their social standing or profession. And yes, that includes a litigant who chooses to manage their own cases. The court is not a playground for attorney. That's the law. The case, the question and appeal, the brief and response to the appellee's brief filed with this court clearly defines the violation of constitutional rights, missing of legal procedures, arbitrary application of law, bias ruling, distinctive and double standards. Did the trial court do not proceed, commit errors, when ruling in favor of closed time, tracking and managing, because it was represented by legal counsel? Penelope was pro se. The trial court made it clear The pro se has no legal rights to be in court without a legal counsel. Mr. Pinedere, let me see if I understand how this started. I think one of the things you seem to be saying is this whole thing happened because the construction company didn't do the work properly, and you ended up having to pay for their mistakes. Is that part of what you're saying? Not exactly, Your Honor. What happened is that after the work was completed, okay, there was, according to closed time property management, they were entitled to receive another approximately $15,000 for the work. Right. Okay. But the problem was that the work they performed was substandard, was not per general, what do you call it? Standards. Standards for the industry, what I consider acceptable workmanship. Okay. So I refused to pay. Okay. But also they refused to correct the problem or try to acknowledge that the work was substandard. And that's when they went out and filed a mechanics lien against my property. That was the big issue. But the other problem was that I never refused to pay closed time. What I did is I requested closed time to give me a detailed list of all the work that was completed. Okay. From the contract and also from the change orders so we could determine the correct amount of the debt that's due. And they refused to do that. That was the, you know, the big issue, the big issues. But if I may, I'm almost done. No, no, take your time. Okay. Did the trial court consider all the facts and events presented by Pen Ymedi were fairness, justice, equality, and honesty? Did the trial court in the proceeding have the legal rights to insult the appellant in violation of the Code of Judicial Conduct only because he was pro se? In all the proceedings, the court painted a picture that the appellant is inept and had to litigate the case because he's not an attorney. He was pro se. But this is not the case. He was not able to defend himself against a bias ruling, double standards, conspiracy, corrupt, obstruction of justice, and abuse of power. Did the trial court commit errors when he ruled in favor of allowing closed time property management to dismiss the case the day of the trial? Did the trial court ever allow Crosstown and Indigo, formerly known as Motorola Credit Union, to enter into a settlement agreement excluding Pen Ymedi in the negotiation, being the principal defendant in this case? Based on facts and evidence filed, the trial court did not consider that the complaint filed by Crosstown was fraudulent. A scam? The court protected Crosstown in ruling in favor of the scam only because the appellant was pro se. Based on facts and evidence, the trial court and Indigo participated in the scam in collusion with Pen Ymedi Legal Counsel, attorney Johnson, by entering a settlement agreement with Crosstown excluding Pen Ymedi being the principal defendant in the negotiation so that the legal counsel, Kaiser, would be paid for his legal fees. Therefore, most of this court's vigil, all trial court orders, remain for further consideration to what the district court's counting for trial. Thank you for giving me the opportunity to present the case respectfully. Counsel Pen Ymedi, pro se. Mr. Pen Ymedi, wasn't the agreement between Crosstown and Motorola or Indigo? How was your attorney involved in this? Okay. Crosstown Travel Management was a contractor. Right. Okay. Motorola, which was formerly, I mean, Indigo, formerly Motorola, employed for its union, is the lender. Right. They have the mortgage on my property. Uh-huh. Okay. Now, the big issue here is that during the three years, almost, for me going back and forth to the court, which was very stressful, and I mentioned everything else, was that Motorola showed up at the last minute without me informing me that they entered an agreement by paying Crosstown the $11,000, which they had no legal rights to do so because the contract that I have to borrow versus the lender, it clearly states, it's stated in the brief that I have the Motorola or Indigo, it's 10 days to notify me that they intend to pay Crosstown. And I have, within 10 days, I have to notify them whether I want to pay Crosstown and settle the case. In other words, they should notify, and that's why they failed to do so. Okay. Okay. It's all spelled out on a contract agreement, we call it, lender and borrower's agreement. But again, I like to emphasize to this court is that the workmanship, I mean, before the, I mentioned before, before the mechanic's leave takes precedent, and that's what the reason Indigo settled was according to them, the mechanic's leave was going to take precedent before the first mortgage. Right. Okay. That's the reason they settled. Right. Right. Okay. Now, which is not the case. According to, again, to the Illinois law, the contract must prove that the workmanship was an added value to the property. In other words, if the property's worth $300,000, okay, the workmanship, the work that was done on the property's worth, let's say, $350,000. Okay. Mr. Peabody, the alarm went off, if you want to finish your thought. You'll have a chance to appear again after the hearing goes, but is there anything further you want to tell us right now? Anything further you want to say right now, to wrap up? That's it. Okay. You'll have time again, and we'll call you up here in a few minutes. Okay. Thank you. Thank you. Thank you. Ms. Ryan, you may proceed on behalf of the appellant. May I please support? Christine Ryan, on behalf of Andigo Credit Union, formerly known as Motorola Employees Credit Union, for brevity, I'll call them Andigo. Andigo had a mortgage on this property, and I think there's been a little bit of confusion that Mr. Pinoveria has had throughout this litigation. First and foremost, our appearance was filed in this case eight days after Mr. Pinoveria's initial pro se appearance was filed. So you're saying you were in the case almost since its inception? Almost since its very inception. When the credit union was served with the lawsuit, we immediately were notified. We do general counsel work for the credit union. We were immediately notified. The complaint was sent to us. A letter was immediately sent out to Mr. Pinoveria. He mentioned about 10 days of a notice. That's pursuant to Section 4 of the mortgage. The mortgage is part of the court record. I believe it's pages 74 to 97. In paragraph 4 of the mortgage, it requires the lender to give notice to the borrower that this lien has been presented, and the borrower then has 10 days to pay it or decide what they're going to do. So what is the notice given? The notice was given. The notice is. . . Is there some proof of that? This isn't indicating I'm sure about this notice. In our reply or in our response brief, it's a letter dated July 8th of 2015. Do we know if he received it? There's no way of knowing whether he received it or not. The mortgage only requires it being sent by regular mail. It's not required to be sent certified. But it was sent to his address on the mortgage. It's been sent to the address that he had on his appearance with the court. I have no reason. . . It never came back to me, so I have no reason to believe that it was not delivered. So the letter complies with the statute and with the saying that there's a lien.  Right, there's a lien. And gave notice that Andigo will act within their rights under the mortgage. Did he ever file. . . Did Mr. Pennyberry ever file a counterclaim? He attempted on four occasions that I recall to file a counterclaim against Crosstown. There was never a request or an attempt to file a crossclaim against Andigo. What happened with this counterclaim? Each time the attorney counsel for Crosstown had brought a motion to dismiss, 2619 motions, there were oral argument in front of Judge Camille on that, which is reflected in the report of proceedings. And each time the motions were granted, Mr. Pennyberry was regularly recommended by Judge Camille, again, also in the report of proceedings, that he should look for some legal assistance, whether it was through pre-legal services with the court or to hire an attorney. Now if this counterclaim was pending, then a dismissal would not have occurred, correct? That is correct. And there was no counterclaim pending. What is also important is this case pended for about one year, and then in October of 2016, Mark Johnson appeared as attorney of record for Mr. Pennyberry. So for the latter half, the latter year of this litigation, he was represented by counsel. Did counsel attempt to refile the counterclaim? I believe he did. And I believe he was denied to do that because Mr. Pennyberry had already made multiple attempts to do that. Somebody filed a counterclaim for declaratory judgment, correct? No, I think that was first in Mr. Pennyberry's brief. Okay. And he also had a motion incorporating it in his brief. Let me ask you these questions just to clarify. I appreciate your cooperation. Absolutely. Why was the counterclaim by the attorney? Why was that dismissed? As I recall, and, again, it's in the record, that it was dismissed because Mr. Pennyberry had made multiple attempts and failed to be able to do it. Multiple pro se attempts. Multiple pro se attempts to state a claim upon which really could be granted. Was there a need to file the counterclaim, Mr. Mayer? Each time he filed the counterclaim, the motion to dismiss were brought up and the motion to dismiss were granted. Right. Then the attorney comes in. Was the attorney denied leave to file a counterclaim, or was it filed and then again dismissed? No. He was in court and asked for leave for it, and there was no pending motion. He orally, as I recall, he orally, and this was over a year ago, he orally requested leave to file, and that was denied on an oral motion. On the spot? Yes, as I recall. Do you remember how many times Mr. Pennyberry was given the opportunity to replead that counterclaim? Before that I was called, Your Honor. And it seemed to me throughout the record that the lawyer kept saying, I'm not sure if this is a counterclaim or an answer, the way it was prepared. You are correct. And when Mr. Johnson came in as counsel for Mr. Pennyberry, he had also addressed that, that the counterclaim was kind of sort of in some terms a convoluted answer, counterclaim, it didn't, he basically conceded that. Did you handle this case in the trial court level? I did, yes, sir. So do you recall any reasons the trial judge articulated as to why he was denying request for leave by the attorney? No, other than that it was on an oral motion instead of a written motion, and that's all I can recall. No reason stated, as far as you recall? I don't recall. Okay. I can certainly take a look at the record and file a supplemental report to Your Honors, and pull that out of the record if you'd like, and get that to you. So there was never a written motion to file a counterclaim by the lawyer? By the lawyer, correct. And in continuing, this second district, along with many other, if not all the districts throughout Illinois, have consistently held that pro se litigants are held to the same standard as litigants with attorneys. Mr. Penaveria mentioned equality and justice. It would be a travesty of justice if we were to give deference or leniency to one party as opposed to another. Everybody has to be treated fairly in litigation matters. And I believe, in my opinion, for what it's worth, that Judge Camille did that. He was very professional. He addressed the issues that Mr. Penaveria and his attorney would bring up. But at the time of the settlement, that was also, notice was given. Mr. Penaveria was represented by Mark Johnson at the time. The trial was set for October 10th. The notice was given to Attorney Johnson on October 5th by the attorney for Crosstown that we had entered into a settlement agreement. I personally forwarded by email, which is also attached as exhibits, C&D, to my response brief. Did you need Mr. Johnson's approval to enter into this? Absolutely not. As a courtesy, I did send him the proposed settlement agreement, proposed release of lien, and also the proposed dismissal order was sent. He was given, under the mechanics lien, he can't take a voluntary dismissal without giving all parties notice and with good cause shown before the court. That was done. And Judge Camille also required, off the top of my head, it's 116, that the defendant's cost had to be reimbursed. And we took a break, and counsel for Crosstown went to an ATM, got the cash, and paid Mr. Penaveria's attorney Johnson the cost, and paid him in open court for reimbursement of those costs. Mr. Penaveria has not shown any evidence of wrongdoing or collusion amongst the attorneys here. And frankly, I'm just shocked to believe that he has brought that issue before this court or any court. The documents speak for itself. The lender definitely had the right under the law and under the mortgage contract to satisfy and settle this claim. There was due notice given. No abuse of discretion or error is within the rulings of the trial court, and the trial court should be affirmed. All right. Thank you very much. Thank you. Mr. Penaveria, you may address the court and respond. Good morning, Your Honor. Again, unfortunately, I have to kind of disagree with all the statements that the legal counsel that represents Motorola, Green, or Indigo, is that going back to the counterclaim, that originally when I was pro se, I did file the counterclaim against Crosstown, but the court arbitrarily dismissed it. How many times did he give you the opportunity to refile that counterclaim? I believe it was two or three times exactly, and all the times he never made it clear. In fact, at one point he told me that there's a law library in the courthouse that should go see it, okay, which I did. It was summed up, but I think the computer unit has been more helpful than anything else. But the issue is that he never made it clear what was the deficiency of the counterclaim. Did he not tell you a couple of times, I'm not sure if this is an answer or a counterclaim, that it's kind of incomprehensible? No, that was not incomprehensible. In fact, as I stated in my opening statement, he insulted me because if this court has read the brief and responded to the brief that was filed, there is nothing that anyone doesn't understand. I believe that even a 15-year-old can understand. It was written in a simple English language, except the judge decided to insult me. Let me ask you this. When you retained the attorney to file the counterclaim, there was an acknowledgment there that you had an attorney at one point, and did he ask to be able to file a counterclaim on your behalf? He did and he didn't, Your Honor. What he did is he says that when I was tossed in, I did file a counterclaim, but the court dismissed it. Okay, so he was not really asking the court. Somehow it wasn't clear if he wanted to file it or not. In fact, towards the end, when they entered into a settlement agreement, I requested my attorney to withdraw to represent me because I felt I was betrayed. He didn't actually represent me. A lot of the facts that he presented to the court during the last, what do you call it, proceedings, okay, everything was kind of ishiwashi, okay? It was not kind of, it wasn't clear. Okay, but as you're standing there today, you don't recall, you're not sure whether he did or did not ask to file a counterclaim? He did ask the court if he could file it, but he did say to the court that it was already dismissed, so he was not going to file one. If he asked if he could file one, what did the judge say? I don't recall whether the judge responded to that or not. It's all in the, what do you call it, the proceedings, I'm not recalling at this point, Your Honor. It's been four years. But the point I'd like also to bring to the attention of this court is that during three years or plus that was in court, okay, Antigua never showed up as a defendant. But they were listed as a defendant. No, they were not. Well, they had to be. When the case was filed, they were listed as a defendant initially. Right, they were listed as a defendant, but they never did anything to participate in the trial. They were what I consider silent defendants. I went through all my pain, aggravation, and everything all by myself. They were never, what we call it, showed up as a defendant until they entered into the settlement. And once they entered into that settlement agreement, did they pay the costs to you and your lawyer? I'm sorry, Your Honor. Did they pay the costs to you and your lawyer? I mean, Motorola? Yes. No, what Motorola did is they took the $11,000, okay, and they added it to my mortgage. Right. Okay. Then when I complained, they removed it. But they sent me a letter. They told me that I'm still responsible for the $11,000. Well, hang on one second. Just to clarify, opposing counsel said that there was an ATM machine and they were paid that day in court. You don't recall that? No, the only thing that was paid in court was, only which I did not agree, only the court costs was like $164. But I did not receive any legal costs that I incurred during that time. Other than the court costs, you're saying? Right. I didn't receive anything which I incurred, not counting all my time. The only thing I received was $160 or something like that, which is the court cost. But I incurred an approximate of about $6,000 or $7,000 in legal fees, which the court completely disregarded. Okay. The time just went on. Anything you want to say to wrap up, Mr. Penaverio? I guess just one second, Your Honor. Okay. This court ruling must not be discretionary, not because the appellant is closing, but must be about the law, the facts, events, firewood, the brief, and the merit of the case. Thank you, Your Honor. With respect, please come up and ready to proceed. Thank you, Mr. Penaverio. Thank you. All right. That will conclude the arguments in this case. I'd like to thank counsel and Mr. Penaverio for being here this morning and the quality of their arguments. The matter will be taken under advisement, of course, and a written decision on this matter will issue in due course at this time.